retaliation claims are devoid of any factual allegations as to how the Defendants retaliated against her.

Plaintiff's claims based on race and national origin discrimination fail to contain a single factual allegation that Defendants engaged in any racially discriminatory conduct. Moreover, her claims based on national origin fail to allege any discrimination based upon her country of origin or ancestry. In addition, her Title VII of the Civil Rights Act ("Title VII") and Americans With Disabilities Act ("ADA") claims against Warnock-Morgan must be dismissed because there is no individual liability for supervisors under these statutes. Finally, Plaintiff's claim based on intentional infliction of emotional distress does not allege the shocking and outrageous conduct required for such a claim.

Dismissal of the Amended Complaint is also warranted under summary judgment standards. The determination to deny her disability benefits was made by SONY BMG's third-party health insurance carrier under a delegation of authority to the carrier to decide such claims. The insurer determined that Plaintiff's ailments were psychosomatic and that, by her own choice, she was not receiving appropriate care as required by the disability plan for the payment of disability benefits. Plaintiff has not proceeded against the proper party or under the proper legal theories with respect to a claim for denial of benefits, thus her claims must be dismissed as a matter of law.

The factual record, including Plaintiff's own recorded statements to SONY BMG's insurance carrier, reflects that there was a single, heated exchange between Plaintiff and Warnock-Morgan, while the latter was recovering from her second miscarriage and was physically and emotionally vulnerable, all facts well known to Plaintiff. Contrary to her

current allegations, Plaintiff told the insurance investigators that it was she who made physical contact with her supervisor by grasping Warnock-Morgan's hands.

The Amended Complaint is bereft of a single factual allegation that Warnock-Morgan acted with any discriminatory intent at the time of the incident or that SONY BMG acted inappropriately or with discriminatory intent in responding to it.[1] Rather, Plaintiff has attempted to turn Defendant Warnock-Morgan's personal misfortune into her personal windfall. The Amended Complaint should be dismissed as a matter of law.

## BACKGROUND FACTS

### A. The Amended Complaint

Plaintiff alleges that she is an African American, has been an employee of SONY BMG since 1991, and became an Associate Director in the "Advertising and Marketing Services Department" in 2005, under the immediate supervision of Warnock-Morgan. Declaration of Clemon Williams ("Williams Decl."), dated February 6, 2008, Ex. A at ¶¶11, 17 and 20.

According to the Amended Complaint, a departmental meeting took place on March 30, 2007, in which Warnock-Morgan "began to yell and curse at the Plaintiff." It further alleges that the next day, March 31, 2006, Warnock-Morgan physically attacked Plaintiff causing her back, neck and psychological injuries. *Id.*, Ex. A at ¶¶21-24.

There is no allegation that Warnock-Morgan's behavior was based on any discriminatory intent. Indeed, the Amended Complaint alleges that Warnock-Morgan

---

[1] While the Amended Complaint obfuscates the matter, it is clear that the exchange between the two women was not based on any disability, real or perceived. Rather, it is Plaintiff's contention that this incident was the *cause* of her stress-related disability.

gave an unsolicited apology to Plaintiff for her outburst and blamed the medications she was taking in connection with her fertility circumstances. *Id.*, Ex. A. at ¶25.

Plaintiff alleges that she reported the incident to the Human Resources Department on April 3 and 17, 2006. *Id.*, Ex. A at ¶26. She makes the entirely conclusory allegation that subsequent to the attack she was forced to work in a hostile work environment, but provides no details as to how the environment was hostile or differed from her previous routine. Indeed, the Amended Complaint confirms that after the incident, Plaintiff continued "to work in the same capacity as Associate Director under the direct supervision of Warnock-Morgan." *Id.*, Ex. A at ¶34.

Although the Amended Complaint alleges that Plaintiff continued to complain to the Human Resources Department regarding her "displeasure at working hand-in-hand on a daily basis with Warnock-Morgan," *id.*, Ex. A at ¶35, there is no allegation that Plaintiff even requested a reassignment or transfer. The pleading also implies that SONY BMG somehow ignored its zero tolerance policy against drugs or violence in the workplace. However, the Amended Complaint does not allege that Warnock-Morgan took any controlled substances *in the workplace* or that they were unlawfully used. It also does not allege that Plaintiff and Warnock-Morgan were treated differently with respect to these policies.

Finally, the Amended Complaint alleges that on May 30, 2006 – two months after the incident – she took a medical leave of absence on her physician's advice. *Id.*, Ex. A at ¶39. Plaintiff alleges she was denied short-term and long-term disability "[b]ecause of Sony's objections," *id.*, Ex. A at ¶¶43-44, and that, for the same reason, her worker's

compensation benefits "were initially denied," *id.*, Ex. A at ¶45. Plaintiff does not dispute that she received all of the worker's compensation benefits that she was due.

Based on these facts, Plaintiff purports to allege disability claims under the ADA (Count I), the New York State Human Rights Law ("NYSHRL") (Count II), and the New York City Human Rights Law ("NYCHRL") (Count III). Without making a single factual allegation regarding discrimination directed at her race or national origin, Plaintiff also alleges claims under Title VII (Count IV), the NYSHRL (Count V), and the NYCHRL (Count VI) on the basis of her race and national origin. Contending that the circumstances described above "exhibited extreme and outrageous conduct," Williams Decl., Ex. A at ¶80, Plaintiff purports to allege a state claim for intentional infliction of emotional distress (Count VII). Finally, Plaintiff purports to include an omnibus claim under Title 42 U.S.C. §1981 based upon Defendants' "discriminatory and retaliatory conduct as described above" (Count VIII), without any further elaboration.

B.  **Facts Relative To Summary Judgment**

The pertinent facts mandating summary judgment in Defendants' favor and dismissal of the Amended Complaint are set forth in the Williams Decl. and the Declaration of Defendant Warnock-Morgan ("Warnock-Morgan Decl."), dated February 6, 2008. These facts conclusively establish that Defendants did not engage in any illegal discrimination against Plaintiff and that the only adverse employment action Plaintiff experienced – the denial of her claim for disability benefits – was (i) self-inflicted, (ii) based on the determination of SONY BMG's insurance carrier, and not Defendants, and (iii) based on Plaintiff's own failure to continue therapeutic treatment as mandated by the disability plan.

Plaintiff and Defendant Warnock-Morgan had an emotionally-charged argument on March 31, 2006. It was, in part, a carryover from the previous day when members of the Creative Group ambushed Warnock-Morgan at a departmental luncheon at SONY BMG with questions concerning the status of their employment positions in the aftermath of a rumored departmental merger. Warnock-Morgan Decl. at ¶¶3-4. The next day, March 31, Plaintiff, becoming increasingly hostile, and raised the issues from the day before and other matters with Warnock-Morgan. Plaintiff accused Warnock-Morgan of being hypocritical, attacked her professional skills, and told her she took things "too personally." *Id.* at ¶5.

Realizing that she was reacting emotionally to the situation, Warnock-Morgan attempted to withdraw from the confrontation with Plaintiff to avoid further unpleasantness and insults. Plaintiff pursued Warnock-Morgan to the elevator bank where the dispute culminated with Warnock-Morgan innocently raising her hands in front of her face to stop Plaintiff's verbal onslaught. *Id.* at ¶7. Despite Plaintiff's allegation that Warnock-Morgan "physically attacked" her, William Decl., Ex. at ¶24, in her taped interview with SONY BMG's insurance investigator she admitted that the physical contact with Warnock-Morgan consisted only of Plaintiff, at her instigation, grasping hands with Warnock-Morgan while they were in a loud altercation. *Id.*, Ex. B at pp. 52-57.

Plaintiff was not suffering any disability at the time of her encounter with Warnock-Morgan. Rather, Plaintiff alleges that this encounter caused her subsequent traumatic injury that was the basis of her disability claim. There is no allegation that Warnock-Morgan or anyone at SONY BMG discriminated against Plaintiff on the basis of any disability that she was suffering prior to the incident. There also is no allegation that

Warnock-Morgan engaged in any discrimination based on Plaintiff's race or national origin during this encounter or at any time before or thereafter.

SONY BMG did not discriminate or retaliate against Plaintiff in any manner. Plaintiff made no allegations of discrimination of any nature after reporting the incident, and, when asked by the company what action she wanted taken, Plaintiff merely stated that Warnock-Morgan's supervisor should be informed of what happened and to allow the disciplinary process to follow its course. Williams Decl. at ¶12. Plaintiff did not ask for a transfer or reassignment following her encounter with Warnock-Morgan. Id.

On April 12, 2006, Adam Owett, Defendant Warnock-Morgan's supervisor, met with Warnock-Morgan and verbally admonished and warned her that any further incident like the one reported by Plaintiff would result in disciplinary action, up to and including termination. Warnock-Morgan Decl. at ¶9.

Thereafter, Plaintiff continued to perform her assigned job duties, and Warnock-Morgan continued as her supervisor without further incident. On May 30, 2006, Plaintiff went on medical leave of absence and filed a claim for disability benefits with SONY BMG's disability carrier, CIGNA Life Insurance Company of New York ("CIGNA"). Williams Decl., Ex. A at ¶39.

CIGNA's Group Disability Insurance Certificate, Williams Decl., Ex. C, provides that, in accordance with the Employee Retirement Income Security Act, "[t]he Plan Administrator has appointed the Insurance Company [CIGNA] as the named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan,

and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law." *Id.*, Ex. C at p. 16.

The Plan also provides that once a participant is disabled, he or she must "be under the care and treatment of a Physician" and that CIGNA will "not pay Disability Benefits for any period of Disability during which you . . . are not receiving Appropriate Care," *id.* at pp. 4, 8, defined as "ongoing medical treatment and care of your Disability that conforms to generally accepted medical standards, including frequency of treatment and care." *Id.*, Ex. C at p. 12.

CIGNA denied Plaintiff's claim for disability benefits based on Plaintiff's failure to receive "Appropriate Care," as required by the Plan. Williams Decl., Ex. D. Specifically, the denial letter relied upon the medical information furnished by Plaintiff's medical providers, which revealed that her back pain was a "psychosomatic issue" that did "not support an impairment from performing your occupation." The denial letter further stated that Plaintiff was referred to Dr. Paley Galst for treatment of post-traumatic stress disorder, but that she voluntarily discontinued psychotherapy treatment. Based on the review of the medical information by the designated health care professionals, the denial letter concluded that "the medical evidence does not support restrictions and limitations imposed of no work." Plaintiff was advised of her rights to appeal CIGNA's decision, which was not based on any input from, or conclusions or opinions of, SONY BMG.

Although she was found fit to resume her duties, Plaintiff did not return to work and remains on unpaid medical leave. Despite her claim that she was removed from SONY BMG's payroll on June 6, 2006, Williams Decl., Ex. A at ¶42, SONY BMG

8

applied Plaintiff's compensable sick days, vacation days and personal days to maintain her on payroll until July 10, 2006, the date when all of her compensable absences were exhausted. When her merit increase for July 2006 was processed, Plaintiff received all pay that she was entitled to, including retroactive increases. Williams Decl. at ¶18.

## ARGUMENT

### POINT I

### THE AMENDED COMPLAINT SHOULD BE DISMISSED

A.  **Governing Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), a district court is required to accept the material facts alleged in the complaint as true. *Pacific Health Advantage v. Cap Gemini Ernst & Young*, 2007 WL 2619052 (S.D.N.Y. Sept. 6, 2007) at *2 (McMahon, J.), *quoting Frasier v. General Elec. Co.*, 930 F.2d 1004 (2d Cir. 1991). The complaint must also be read generously, drawing all reasonable inferences in favor of the plaintiff. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S. Ct. 609, 614 (1972).

However, while a complaint need not contain detailed factual allegations, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007); *Pacific Health Advantage, supra. See also Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 2008 WL 219765 (S.D.N.Y. Jan. 24, 2008) at *1 ("bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations" sufficient to defeat the motion); *Gavish v. Revlon, Inc.*, 2004 WL 2210269 (S.D.N.Y. Sept. 30, 2004)

at *10 (same). Rather, a plaintiff must *assert* "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic* at 1974. *See also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (applying *Bell Atlantic* to discrimination claims); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("'plausibility standard'...obligates a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*").

### 1. The Disability Discrimination Claims Must Be Dismissed

In order to establish a disability discrimination claim, a plaintiff must allege that (1) her employer is subject to the ADA; (2) she suffers a disability within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of the position, with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Giordano v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001); *James v. Federal Reserve Bank Of New York*, 2005 WL 1889859 (E.D.N.Y. Aug. 8, 2005) at *9, *adhered to on reconsideration*, 471 F. Supp.2d 226 (E.D.N.Y. 2007). Plaintiff's NYSHRL and NYCHRL claims are subject to the same requirements. *Pace v. Paris Maintenance Co.*, 107 F. Supp.2d 251, 266 (S.D.N.Y. 2000), *aff'd*, 7 Fed. Appx. 94 (2d Cir. April 3, 2001).

Because SONY BMG employs more than fifteen persons, Plaintiff has only sufficiently alleged the first of the above-enumerated pleading requirements. Williams Decl., Ex. A at ¶15.

Plaintiff's claim that she sustained back, neck and psychological injuries as a result of her altercation with Warnock-Morgan fails to state a claim for a disability within the meaning of the federal and state statutes. SONY BMG's third-party insurer concluded

that all of her injuries were psychosomatic or stress related, which determination is not subject to review in this proceeding. The Amended Complaint confirms that her claims are based on her "fears" and "the emotional stress" of continuing to work under the supervision of Warnock-Morgan. *Id.*, Ex. A at ¶¶35, 36, 38, 40.

A "mental or psychological disorder" may satisfy the regulatory definition of a disability. 29 C.F.R. §1630.2(i). However, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. §1630.2(j)(3)(i). The courts have uniformly recognized that the inability to work under a particular supervisor does not constitute a disability. *See, e.g., James, supra*, (granting motion to dismiss disability discrimination claims based on plaintiff's alleged inability to work and interact with others and stressful work situation); *Harrison v. New York Housing Auth.*, 2001 WL 1658243 (S.D.N.Y. Dec. 26, 2001) at *2-3 (granting motion to dismiss ADA claim based on plaintiff's stress from supervisors); *Raisley v. First Manhattan Co.*, 4 Misc. 3d 1022(A), 798 N.Y.S.2d 347, 2004 WL 2059539 (Sup. Ct. N.Y. Co. Sept. 9, 2004) at *4 n.3 (granting motion to dismiss New York State and City disability claims based on stress caused by supervisor).

In *Mescall v. Marra*, 49 F. Supp.2d 365, 373 (S.D.N.Y. 1999), as here, plaintiff's disability claims were based on an alleged mental impairment "caused or exacerbated by" her interaction with her supervisor. Mescall took a medical leave of absence on her doctor's recommendation, as Plaintiff has allegedly done here. Williams Decl., Ex. A at ¶39. Dismissing the ADA claims, the district court held that the inability to work under the supervision of a particular counselor "does not constitute a disability within the meaning of the ADA."