UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
PATRICIA HARRIS LEE, :

                                         07 CV 6733 (CM)

               Plaintiff, :

                                         **DECLARATION OF**

      v. :   **CLEMON WILLIAMS**

SONY BMG MUSIC ENTERTAINMENT, INC. :
and BARBARA WARNOCK-MORGAN,
Individual, :

              Defendants. :
------------------------------------------------------------x

      CLEMON WILLIAMS, declares as follows:

      1. I am the Vice President of the Law Department of SONY BMG MUSIC ENTERTAINMENT (hereinafter "SONY BMG"). I submit this declaration in support of Defendants' motion, pursuant to Rule12(b)(6), Fed. R. Civ. P., for an order dismissing the Amended Complaint, dated November 29, 2007 ("Amended Complaint"), a copy of which is attached hereto as Ex. A, and/or granting summary judgment, pursuant to Rule 56, in favor of Defendants. I have personal knowledge of the matters contained in this declaration and, if called upon, I could and would testify to each of the statements made herein.

      2. Plaintiff purports to allege federal and state anti-discrimination claims and a state law claim for intentional infliction of emotional distress. The action stems entirely from a single, heated verbal altercation between Plaintiff and her immediate supervisor, Defendant Barbara Warnock-Morgan. At the time of the exchange, Ms. Warnock-Morgan was in a physically and emotionally distressed state, having recently suffered a second

miscarriage. The Amended Complaint, however, fails to allege a single allegation that Ms. Warnock-Morgan engaged in any conduct prohibited by the anti-discrimination laws. The absence of any such discrimination is confirmed by the accompanying declaration of Ms. Warnock-Morgan, dated February 6, 2008 ("Warnock-Morgan Decl.") and by Plaintiff's own statements against interest, which were made in a recording taken by SONY BMG's independent workmen's compensation carrier, which is attached hereto as Ex. B.

3. SONY BMG did not engage in any discriminatory conduct toward Plaintiff either before or after the incident recounted by Plaintiff in her complaint. The incident was thoroughly investigated by SONY BMG's Human Resources Department. As confirmed in the Amended Complaint, Ex. A at ¶34, following the incident, Plaintiff remained employed "in the same capacity" as before, Ex. A at ¶34, and no further incidents between Plaintiff and Ms. Warnock-Morgan were alleged by Plaintiff in the Amended Complaint.

4. Nevertheless, Plaintiff continued to complain to Human Resources about working under Ms. Warnock-Morgan's supervision, which she alleges has led to stress-related injuries and constituted a hostile work environment. There are no allegations in the Amended Complaint that the conditions of her employment were caused by any discriminatory animus.

5. SONY BMG did not take any adverse employment action against Plaintiff at any time, and more specifically, because of the alleged incident or her application for disability benefits. As discussed more fully below, Plaintiff applied for disability benefits through SONY BMG's disability carrier. Her claim was denied by the independent third

party carrier because Plaintiff voluntarily abandoned treatment for her psychosomatic disorders, and the carrier found there was no basis for her refusal to return to work. This determination was made entirely by the independent third party carrier, as delegated under the then prevailing disability policy maintained by SONY BMG. Importantly, SONY BMG played no role in the decision to deny Plaintiff disability benefits. Despite the disability carrier's determination, Plaintiff has not returned to work and remains on unpaid medical leave.

6. Plaintiff's dispute with SONY BMG is that she and Warnock-Morgan had an isolated, unpleasant encounter and that she is dissatisfied with SONY BMG's handling of the matter. She is complaining that she is not being paid medical leave. As discussed in the accompanying memorandum of law, Plaintiff has neither stated any claim for discrimination on the basis of disability, race or national origin under federal or state law, nor has she stated a claim for intentional infliction of emotional distress. As discussed below, as there are no genuine issues of material fact, summary judgment should be awarded in Defendants' favor.

7. Plaintiff began working for BMG Music Entertainment in 1991. Following the merger of BMG Music Entertainment and Sony Music in 2004, Plaintiff remained employed in the newly-constituted SONY BMG. In August 2005, Plaintiff was promoted to Associate Director of Advertising Marketing Department, under the immediate supervision of Ms. Warnock-Morgan. Ex. A at ¶¶17, 20, and 21.

8. While there were no previous disputes between Plaintiff and Ms. Warnock-Morgan, Ex. B at p. 62, they became engaged in an argument late in the workday on March 31, 2006, regarding an impromptu conference the previous day, which involved

sensitive matters concerning the merger of departments, positions and compensation. At the time of their verbal argument, Ms. Warnock-Morgan was recovering from a surgical procedure earlier in the week, following her second miscarriage, stemming from an unsuccessful in vitro fertilization.

9. With the exception of Plaintiff, the other members of the Advertising Marketing Department were sensitive to Ms. Warnock-Morgan's health circumstances and fragile emotional state. Plaintiff, however, in the course of the verbal altercation in a hallway accused Ms. Warnock-Morgan of being a hypocrite, attacked her professional skills, and admonished her for "taking things too personally." *See* Warnock-Morgan Decl. at ¶¶3, 5.

10. Realizing that she was reacting emotionally to the situation, Ms. Warnock-Morgan attempted to withdraw from Plaintiff to avoid further unpleasantness and insults. Plaintiff pursued Ms. Warnock-Morgan to the elevator bank where the dispute culminated with Ms. Warnock-Morgan innocently raising her hands in front of Plaintiff to stop her verbal onslaught. Despite Plaintiff's allegation in the Amended Complaint that Ms. Warnock-Morgan "physically attacked" her, Ex. A at ¶24, by her own admission during her taped interview with SONY BMG's insurance investigator, the physical contact between the two women consisted only of Plaintiff grasping her hands with those of Ms. Warnock-Morgan while they were in a loud altercation. Ex. B at pp. 52-57.

11. Plaintiff was admittedly not suffering any disability at the time of this encounter, as confirmed by the absence of any allegation to that effect in the Amended Complaint. Rather, Plaintiff alleges that this encounter caused her subsequent traumatic injury that was the basis of her disability claim. Accordingly, there is no allegation that

Ms. Warnock-Morgan or anyone at SONY BMG discriminated against Plaintiff on the basis of any disability she was suffering prior to the incident. There is also no allegation that Ms. Warnock-Morgan engaged in any discrimination based on Plaintiff's race or national origin during this altercation or at any time before or after.

12. SONY BMG did not discriminate or retaliate against Plaintiff in any manner. Plaintiff made no allegations of discrimination of any nature after reporting the incident, and, when asked what recourse she wanted the company to take, Plaintiff stated that she wanted Ms. Warnock-Morgan's supervisor to be informed of the altercation and allow the disciplinary process to follow its course. Plaintiff did not ask for a transfer or reassignment.

13. Adam Owett, Ms. Warnock-Morgan's supervisor, met with Ms. Warnock-Morgan on April 12, 2006. Although sympathetic to Ms. Warnock-Morgan's vulnerable physical and emotional state at the time of the incident, Mr. Owett verbally admonished and warned her that any further incident would result in disciplinary action, up to and including termination. Warnock-Morgan Decl. at ¶9.

14. Between March 31 and May 30, 2006, Plaintiff continued to perform her assigned job duties, and Ms. Warnock-Morgan continued as her supervisor without further incident. On May 30, 2006, Plaintiff went on medical leave and filed a claim for disability benefits with SONY BMG's disability carrier, CIGNA Life Insurance Company of New York ("CIGNA").

15. CIGNA's Group Disability Insurance Certificate, Exhibit C hereto, provides that, in accordance with the Employee Retirement Income Security Act (ERISA),"[t]he Plan Administrator has appointed the Insurance Company [CIGNA] as the

named fiduciary for adjudicating claims for benefits under the Plan, and for deciding any appeals of denied claims. The Insurance Company shall have the authority, in its discretion, to interpret the terms of the Plan, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact. All decisions made by the Insurance Company shall be final and binding on Participants and Beneficiaries to the full extent permitted by law." Ex. C at p. 16. Thus, SONY BMG played no role with respect to the denial of benefits to Plaintiff.

16. The policy also provides that once a participant is disabled, he or she must "be under the care and treatment of a Physician" and that the CIGNA will "not pay Disability Benefits for any period of Disability during which you…are not receiving Appropriate Care," Ex. C at pp. 4, 8, defined as "ongoing medical treatment and care of your Disability that conforms to generally accepted medical standards, including frequency of treatment and care." Id. at p. 12.

17. By letter dated June 30, 2006, Ex. D hereto, CIGNA advised Plaintiff that her claim for disability benefits was denied based on Plaintiff's failure to receive "Appropriate Care," as required by the Plan. Specifically, the letter relied upon the medical information furnished by Plaintiff's medical providers, which revealed that her back pain was a "psychosomatic issue" that did "not support an impairment from performing your occupation." The letter further stated that Plaintiff was referred to Dr. Paley Galst for treatment of post-traumatic stress disorder, but that she voluntarily discontinued psychotherapy treatment. Based on the review of the medical information by the nurse case manager and the associated medical doctor, the letter concluded that "the medical evidence does not support restrictions and limitations imposed of no work."

Plaintiff was advised of her rights to appeal CIGNA's decision, which was not based on any input from or conclusion or opinion of SONY BMG.

18. Although she was found fit to resume her duties, Plaintiff did not return to work and remains on unpaid medical leave. Despite her claim that she was removed from SONY BMG's payroll on June 6, 2006, SONY BMG, in accordance with company policy, applied Plaintiff's compensable sick days, vacation days and personal days to maintain her on payroll until July 10, 2006, the date when all of her compensable absences were exhausted. When her merit increase for July 2006 was processed, Plaintiff received all pay that she was entitled, including retroactive increases.

19. SONY BMG has not discriminated against Plaintiff on the basis of disability, race, national origin or any other reason. Plaintiff does not set forth any facts of disability, racial or national origin discrimination practiced by SONY BMG against her. She neither identifies any adverse employment action taken by SONY BMG, nor does she explain how SONY BMG retaliated against her based on the incident with Ms. Warnock-Morgan.

20. Consistent with its vigorous commitment to affording its employees a workplace free from discrimination and harassment as set forth in its written policies on "Equal Employment Opportunity/Affirmative Action", "Diversity", "Accommodating Individuals With Disabilities," "Respectful Work Environment," and "Harassment-Free Workplace", copies of which are annexed hereto as Ex. E, SONY BMG has treated Plaintiff fairly and without discrimination. SONY BMG and Ms. Warnock-Morgan have not violated any federal or state anti-discrimination statutes, nor have they engaged in any conduct that could support a claim for the intentional infliction of emotional distress.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York, on this 6th day of February, 2008.

*[signature]*
CLEMON WILLIAMS