In *Thompson v. Federal Reserve Bank of New York*, 2004 WL 330243 (S.D.N.Y. Feb. 23, 2004), plaintiff claimed that she suffered from cardiac fibrillation and major depression caused by her relationship with her supervisor. As here, plaintiff did not return to work after she was medically cleared to resume working. The district court ruled that the defendant did not violate the ADA when it terminated plaintiff: "Job-related stress – particularly that caused by working with a particular supervisor – is not considered a disability under the ADA." *See also Potter v. Xerox Corp.*, 88 F. Supp.2d 109, 112-13 (W.D.N.Y. 2000), *aff'd*, 1 Fed. Appx. 34 (2d Cir. Jan. 5, 2001) ("[P]laintiff's impairment is his inability to work under the supervision of Danylyshyn. That does not rise to the level of a disability under the statutory definition.").

Plaintiff does not allege that despite her disability she was otherwise qualified to perform her job with or without reasonable accommodation under the third prong of a disability claim. Although she alleges that SONY BMG refused to accommodate her because of her disability, she does not allege that she requested or was denied any accommodation, or what the nature of such accommodation might be. *See, e.g., Pimentel v. Citibank, N.A.*, 29 A.D.3d 141, 148, 811 N.Y.S.2d 381, 386 (1st Dep't 2006) (plaintiff must establish that she proposed a reasonable accommodation and that the defendant refused to make such accommodation"). Even assuming Plaintiff requested a transfer to another department under a different supervisor, that is not a reasonable accommodation under the ADA and, indeed, is a presumptively unreasonable request. *Potter, supra*, 88 F. Supp.2d at 114.

Finally, Plaintiff fails to allege that she suffered an adverse employment action as a result of her disability. As the Amended Complaint makes clear, Plaintiff's working

conditions remained unchanged after her altercation with Warnock-Morgan. Williams Decl., Ex. A at ¶34. Although the pleading alleges that she was denied short and long-term disability benefits, and her worker's compensation benefits were delayed as a result of SONY BMG's objections, these allegations do not support a claim for relief under the ADA, the NYSHRL, or the NYCHRL.

For example, in *Dedyo v. Baker Eng'r New York, Inc.*, 1998 WL 9376 (S.D.N.Y. Jan. 13, 1998) at *12-13, the court dismissed ADA and NYSHRL disability claims holding that "a simple denial of entitlement does not state a claim under the ADA. Congress did not intend to federalize all claims of improper withholding of disability benefits, and we decline to adopt a rule that would compel that result." *See also Fiscina v. New York City Dist. Council of Carpenters*, 401 F. Supp.2d 345, 356 (S.D.N.Y. 2005), *aff'd*, 206 Fed. Appx. 8 (2d Cir. Sept. 19, 2006) ("Plaintiff has presented no authority that a mere denial of disability benefits can properly be construed as a discrimination claim under the ADA, and [the Court] is not persuaded that such a claim is proper.").

Accepting as true Plaintiff's allegation that Warnock-Morgan "physically attacked" her, Williams Decl., Ex. A at ¶24, there is not, and cannot be, any allegation that the attack was an act of discrimination based on any disability. Plaintiff does not allege that she had any disability before the incident. Indeed, Plaintiff claims the incident was the *cause* of her stress-related disability. Thereafter, as the Amended Complaint alleges, Plaintiff continued "in the same capacity" as before the incident. *Id.* at ¶34. Such allegations, as here, fail to satisfy the standard for stating a claim of discrimination based on a hostile work environment, which entails a workplace "permeated with discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the

conditions" of employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993). *See also Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *Tomka v. Seller Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995).

The district courts in this Circuit have routinely dismissed hostile work environment claims at the pleading stage "where the alleged conduct was not severe or pervasive enough to warrant relief." *James, supra*, 2005 WL 1889859 at *7. *See also Brightman v. Prison Health Serv. Inc.*, 2007 WL 1029031 (E.D.N.Y. Mar. 30, 2007) at *5; *Prince v. Cablevision Systems Corp.*, 2005 WL 1060373 (S.D.N.Y. May 6, 2005) at *9.

While a single extremely outrageous act could overcome the need to show pervasive misconduct, the act must have been directed at the employee's protected status. *Brightman, supra*; *Nakis v. Potter*, 2004 WL 2903718 (S.D.N.Y. Dec. 15, 2004) at *22. Otherwise, as the Second Circuit stated in *Alfano*, the federal courts would be overwhelmed:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

294 F.3d at 377. Warnock-Morgan's outburst, whether physical or verbal, was not directed at any identifiable disability or any other status of Plaintiff that is protected by the anti-discrimination statutes. Indeed, Plaintiff alleges that Defendant's outburst was precipitated by Plaintiff having schemed behind her supervisor's back in organizing her colleagues against her.

Plaintiff's generalized and unsubstantiated claim that Defendants retaliated because of her "complaints and opposition to discrimination" is also insufficiently

pleaded. Williams Decl., Ex. A, at ¶52. In order to state a claim under the ADA for retaliation, a plaintiff must allege that the retaliation was directed at activity protected under the statute *and* that there was a causal connection between the protected conduct and the adverse employment action. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768-69 (2d Cir. 1998). Plaintiff does not allege what protected activity she engaged in, or whether it related to opposing disability discrimination. Moreover, as set forth above, Plaintiff has failed to allege any adverse employment action, much less one that was causally connected to any protected conduct. *See, e.g., Harrison, supra*, 2001 WL 1658243 at *3 (granting motion to dismiss where facts alleged did not establish that alleged retaliation was based on protected activity in reference to her alleged disability). *See also Brightman, supra*, at *7. Moreover, any claim that Defendants retaliated against Plaintiff in connection with her receipt of workers' compensation is improperly before this Court because the Workers' Compensation Board is the exclusive forum for such claims. New York Workers' Compensation Law §120; *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214 (E.D.N.Y. 1993); *Wehling v. Bayex, Inc.*, 248 A.D.2d 973, 670 N.Y.S.2d 277 (4th Dep't 1998). Despite these fatal pleading deficiencies, Plaintiff repeats the same nebulous charge of retaliation with respect to her racial and national origin claims. *See, infra*.

The disability discrimination claims against Defendant Warnock-Morgan must be dismissed for the further reason that there is no individual liability under the ADA. *See, e.g., Mescall, supra*, 49 F. Supp.2d at 367 n.1; *Harrison v. Indosuez*, 6 F. Supp.2d 224, 229 (S.D.N.Y. 1998) (supervisory employees may not be held individually liable under ADA).

### 2. The Racial And National Origin Discrimination Claims Must Be Dismissed

In Count IV of the Amended Complaint, Plaintiff alleges that Defendants discriminated and retaliated against her on the basis of her race and national origin in violation of Title VII. Williams Decl., Ex. A at ¶64. She repeats this allegation with reference to the NYSHRL and the NYCHRL claims in Counts V and VI. In Count VIII, she alleges, without more, that Defendants' retaliatory and discriminatory conduct violated 42 U.S.C. §1981.

Title VII prohibits discrimination in employment on the basis, *inter alia*, of race and national origin. NYSHRL and NYCHRL "are analyzed identically to claims under . . . Title VII." *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999). The Amended Complaint contains no factual allegations of any discriminatory conduct directed at Plaintiff's race or national origin. While the pleading alleges that Defendants retaliated against her because of her "complaints and opposition to discrimination," no facts are pleaded regarding any complaints based on race or national origin or in what manner Defendants purportedly retaliated against her. *See, e.g., Kato v. Ishihara*, 239 F. Supp.2d 359, 364 (S.D.N.Y. 2002), *aff'd*, 360 F.3d 106 (2d Cir. 2004); *Whyte v. Contemporary Guidance Servs.*, 2004 WL 1497560 (S.D.N.Y. July 2, 2004) at *3 (retaliation claim inadequately pled "as there are no retaliatory acts alleged in the complaint"). Indeed, the only complaints Plaintiff allegedly made to SONY BMG's management concerned the purported stress of continuing in her position, which related, at best, to her alleged disability, but not to any claim of racial or national origin discrimination. Williams Decl., Ex. A at ¶35.

In order to survive a motion to dismiss her Title VII and related claims, Plaintiff must allege more than the mere fact that she falls within a protected status coupled with a conclusory allegation that Defendants discriminated against her. She must allege the "facts necessary to support a finding of liability." *Russo-Lubrano v. Brooklyn Federal Sav. Bank*, 2007 WL 121431 (E.D.N.Y. Jan. 12, 2007) at *4. *See also Watts v Services for the Underserved*, 2007 WL 1651852 (E.D.N.Y. June 6, 2007) at *3-4; *Whyte, supra,* 2004 WL 1497560 at *3 (dismissing Title VII complaint that failed to "provide notice of the relevant facts underlying [the] discrimination claims"); *Straker v. Metropolitan Transit Authority*, 333 F. Supp.2d 91, 102 (E.D.N.Y. 2004) ( a count "which contains no facts supporting the grounds upon which [the] claim of race discrimination rests, must be dismissed").

Plaintiff's conclusory invocation of the term "hostile work environment" in her complaint alleges no facts of discriminatory conduct directed at any protected status – much less the severe and pervasive conduct necessary to sustain such a claim, as previously set forth. *See, e.g., Alfano, supra,* 294 F.3d at 374; *Quinn, supra,* 159 F.3d at 768; *Prince, supra,* 2005 WL 1060373 at *10.

The allegations of employment discrimination based on "national origin" suffer a separate deficiency. Plaintiff's allegation that she is "an African-American female," Williams Decl., Ex. A at ¶11, does not state a claim for discrimination based on "national origin," which is defined in *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88, 94 S. Ct. 334, 336 (1973), as "the country where a person was born, or, more broadly, the country from which his or her ancestors came."

As this Court and numerous others have ruled, "national origin" is not synonymous with race. *Brewster v. City of Poughkeepsie*, 447 F. Supp.2d 342, 351 (S.D.N.Y. 2006) (McMahon, J.). *See also Dixit v. City of New York Dep't of Gen. Servs.*, 972 F. Supp. 730, 734 (S.D.N.Y. 1997) ("[a]n assertion of racial bias is conceptually distinct from a claim based on national origin"). Accordingly, a national origin complaint must be based on discrimination directed at plaintiff's country of origin. *See, e.g., Heyer v. The City of New York*, 2007 WL 951381 (S.D.N.Y. Mar. 29, 2007) (plaintiff asserted claims of racial discrimination as an African-American and national origin discrimination based on Dominican origin); *Fahmy v. Duane Reade, Inc.*, 2005 WL 2338711 (S.D.N.Y. Sept. 26, 2005) (claims of discrimination based on race and national origin by "an African-American male of Egyptian ancestry"); *Cordoba v. Beau Dietl & Assocs.*, 2003 WL 22902266 (S.D.N.Y. Dec. 8, 2003) (national origin discrimination directed at Columbian national ancestry).

Plaintiff has not alleged any discrimination directed at her country of origin or ancestry. Accordingly, she has not alleged that she is a member of a "protected class" for purposes of national origin discrimination claims. *See, e.g., Milford v. New York City Board of Health*, 2005 WL 195561 (E.D.N.Y. Jan. 27, 2005) at *3, *aff'd*, 158 Fed. Appx. 354 (2d Cir. Dec. 20, 2005) (dismissing national origin claims by South Carolina resident where there were no allegations of discrimination based on his American ancestry).

Plaintiff's NYSHRL and NYCHRL claims based on national origin are similarly deficient. *See, e.g., Cheung v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 913 F. Supp. 248, 252 (S.D.N.Y.1996) (applying *Espinoza* and dismissing NYSHRL claim pursuant to Rule 12(b)(6)). *See also Benjamin v. New York City Dept. of Health*, 17 Misc. 3d

1122(A), 2007 WL 3226958 (Sup. Ct. N.Y. Co. Oct. 23, 2007) at *7 (noting "conceptual differences in discrimination based upon 'race' or 'color' or 'national origin' for State and City claims).

Plaintiff's Title VII claims against Warnock-Morgan must also be dismissed because the statute does not impose individual liability on supervisory personnel. *See, e.g., Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (Title VII does not impose liability upon individual supervisors); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d. Cir. 2000) (per curiam); *Tomka, supra,* 66 F.3d at 1317.

Plaintiff's perfunctory Count VIII claim based on §1981 is unsupported by any factual allegations of racial animus, which are obligatory for stating such a claim. *See, e.g., Yusuf v. Vassar College*, 35 F.3d 709, 713-14 (2d Cir, 1994); *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam) ("complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Act, fails to state a claim under Rule 12(b)(6)"); *X-Men Security, Inc. v. Pataki*, 983 F. Supp. 101, 108-09 (E.D.N.Y. 1997), *reversed in part on other grounds*, 196 F.3d 56 (2d Cir. 1999); *Rowe v. William Morris Agency, Inc.*, 1999 WL 335139 (S.D.N.Y. May 26, 1999) at *8.

Moreover, §1981 does not embrace claims of national origin discrimination. *See, e.g., Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1981); *Fahmy, supra,* at *2 n.1; *Franchitti v. Bloomberg, L.P.*, 2004 WL 2366183 (S.D.N.Y. Oct. 20, 2004) at *3-4; *Ghose v. Century 21, Inc.*, 108 F. Supp.2d 373, 380 (S.D.N.Y. 2000), *aff'd*, 12 Fed. Appx. 52 (2d Cir. June 14, 2001); *Kim v. Dial Service Intern., Inc.*, 1997 WL 5902 (S.D.N.Y. Jan. 8, 1997) at *4 (dismissing §1981 claim based

on national origin); *Ahmed v. Samson Management Corp.*, 1996 WL 183011 (S.D.N.Y. Apr. 17, 1996) at *6.

### 3. Plaintiff Fails To Allege Outrageous Conduct

If the Court dismisses the federal ADA and Title VII claims and the *in pari materia* NYSHRL and NYCHRL claims, it should decline to exercise supplemental jurisdiction over the remaining state-law claim for intentional infliction of emotional distress. *See, e.g., K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995); *Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000); *In re. Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 61 (2d Cir. 1998) (per curiam). In any event, the pleading does not allege outrageous facts to support such a claim and should be dismissed for this separate ground.

New York has adopted the *Restatement (2d) of Torts* §46(1) with respect to the elements of an intentional infliction of emotional distress claim. Thus, a plaintiff must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* at comment d.

These pleading requirements are strictly construed. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353 (1993) (*Restatement* standard is "rigorous, and difficult to satisfy"); *Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 545 (N.D.N.Y. 1989); *Realmuto v. Yellow Freight System, Inc.*, 712 F. Supp. 287, 289 (E.D.N.Y. 1989). As stated in *Mariani v. Consolidated Edison Co. of New York, Inc.*, 982 F. Supp. 267, 275 (S.D.N.Y. 1997), *aff'd*, 172 F.3d 38 (2d Cir. 1998), "New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the

20

employment context . . . ." Accordingly, the New York federal and state courts have not hesitated to dismiss such claims at the pleading stage even where the plaintiff has alleged far more egregious facts and circumstances than those before this Court. *See, e.g., Russo-Lubrano, supra,* 2007 WL 121431 at *7 (summarizing dismissed allegations in state and federal complaints); *Fahmy, supra,* 2005 WL 2338711 at *7-8; *Druschke v. Banana Republic, Inc.,* 359 F. Supp.2d 308, 314 (S.D.N.Y, 2005); *Wanamaker, supra, Silberstein v. Advance Magazine Publishers, Inc.,* 988 F. Supp. 391, 394 (S.D.N.Y. 1997); *Cheung, supra,* 913 F. Supp. at 254; *Rivera v. Baccarat, Inc.,* 1996 WL 251850 (S.D.N.Y. May 10, 1996) at *3; *Realmuto, supra; Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983); *Leibowitz v. Bank Leumi Trust Co.,* 152 A.D.2d 169, 181-82, 548 N.Y.S.2d 513, 521 (2d Dep't 1989).

### 4. Leave To Amend Should Be Denied

Plaintiff's pleading has already been amended once as of right. It is evident from the facts alleged that Plaintiff cannot assert any legally cognizable claim of discrimination, and further amendment, if sought, should be denied as it would be futile. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Jones v. New York State Div. of Military and Naval Affairs,* 186 F.3d 45, 50 (2d Cir. 1999). This result is particularly appropriate where, as here, the Court's jurisdiction is limited by the claims filed by Plaintiff before the administrative agencies. *See, e.g., Alonzo v. Chase Manhattan Bank, N.A.,* 25 F. Supp.2d 455, 457-58 (S.D.N.Y. 1998); *James, supra,* 2005 WL 1889859 at *5. Plaintiff may not seek to resuscitate her complaint by adding entirely new claims or theories.

## POINT II

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

### A. Governing Standards

Pursuant to Rule 56(c), Fed. R Civ. P., summary judgment is appropriate where the evidence offered demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." 477 U.S. at 323, 106 S. Ct. at 2553.

The district court must consider the evidence and draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). However, a party opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that its version of relevant events is not fanciful. *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997). *See also Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *BellSouth Telecomms., Inc. v. W. R Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996). Accordingly, a party opposing summary judgment must "go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U. S. at 324, 106 S. Ct. at 2553.

**B.   Plaintiff Has Not Raised A Triable Issue of Material Fact On Any Claim**

There is no genuine issue of fact raised by Plaintiff's claims. The indisputable facts, as well as the Amended Complaint, establish, at best, that Plaintiff claims to be unable to work under Warnock-Morgan's supervision. Such allegations do not support an ADA claim as a matter of law. *Thompson v. Federal Reserve Bank of New York*, 2004 WL 330243 (S.D.N.Y. Feb. 23, 2004) (granting summary judgment where plaintiff's disability was based on stress of working with supervisor); *Potter v. Xerox Corp.*, 88 F. Supp.2d 109 (W.D.N.Y 2000), *aff'd*, 1 Fed. Appx. 34 (2d Cir. Jan. 5, 2001) (granting defendant's motion for summary judgment where ADA claim was based on inability to work for supervisor and plaintiff failed to establish he could continue to work with reasonable accommodation).

The record establishes that Defendants did not discriminate against Plaintiff on any basis, took no adverse employment action against her, did not create a hostile work environment, did not retaliate against her, and did not engage in any outrageous or shocking conduct. The courts have routinely granted summary judgment dismissing similar claims even where the facts were far more favorable to plaintiffs than those alleged here. *See, e.g., Mathura v. Council For Human Services Home Care Services, Inc.*, 1996 WL 157496 (S.D.N.Y. April 2, 1996) (granting summary judgment on Title VII retaliation claim in the absence of any factual basis); *Hill v. Milford v. N.Y.C. Bd. Of Health*, 2005 WL 195561 (E.D.N.Y. Jan 27, 2005) (summarily dismissing Title VII and ADA claims based on national origin, hostile work environment and retaliation); *Edwards v. City of New York*, 2005 WL 3466009 (S.D.N.Y. Dec. 19, 2005) (granting summary judgment on §1981 and hostile work environment claims where plaintiff failed to establish genuine

issue of fact regarding alleged racial discrimination); *Silberstein v. Advance Magazine Publishers, Inc.*, 988 F. Supp. 391 (S.D.N.Y. 1997) (summarily dismissing Title VII and intentional infliction of emotional distress claims).

As discussed previously, Plaintiff lacks any claim for denial of benefits under the ADA, thus defendants are entitled to summary judgment. *See Fiscina, supra*, 401 F. Supp.2d at 356; *Dedyo, supra*, 1998 WL 9376 at *12-13. Moreover, in accordance with the SONY BMG's disability plan with CIGNA, the Plan Administrator delegated to the insurance company the right to make "final and binding" decisions on benefits. Based upon Plaintiff's "medical evidence," CIGNA determined that Plaintiff was not receiving Appropriate Care, as required under the Plan, because she voluntarily discontinued therapy and because her condition did not support "restrictions and limitations" precluding her from working. Williams Decl, Ex. D.

As this Court ruled in *Billinger v. Bell Atlantic*, 240 F. Supp.2d 274, 278 (S.D.N.Y. 2003) (McMahon, J.), *aff'd*, 124 Fed. Appx. 669 (2d Cir. Jan. 21, 2005), *cert. denied*, 546 U.S. 843, 126 S. Ct. 90 (2005), when the provider, as here, is granted discretionary authority to determine eligibility for benefits, plaintiff's remedy, after exhausting the provider's appeal process, is to maintain an action against the provider. Such determinations are reviewed under the "arbitrary and capricious standard" and cannot be disturbed unless the denial of benefits constitutes an "abuse of discretion." *Id. See also Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208, 211 (2d Cir. 2006); *Fuller v. J.P. Morgan Chase & Co.*, 423 F.3d 104, 106-07 (2d Cir. 2005); *Scannell v. Metropolitan Life Ins. Co.*, 2003 WL 22722954 (S.D.N.Y. Nov. 18, 2003) at *4. Under

these circumstances, Plaintiff was required to maintain her action against CIGNA for the denial of disability benefits, and not Defendants who took no part in the determination.

## CONCLUSION

For all the foregoing reasons, SONY BMG respectfully requests that the Court dismiss the Amended Complaint for for failure to state a claim or, alternatively, for summary judgment, together with such other and further relief as the Court deems just and proper.

Dated: February 7, 2008
New York, New York

JONATHAN D. DAVIS, P.C.

By: _____
Jonathan D. Davis (JD 5712)
99 Park Avenue
Suite 1600
New York, New York 10016
(212) 687-5464
Attorneys for Defendant SONY BMG MUSIC ENTERTAINMENT and Barbara Warnock-Morgan