UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

PATRICIA HARRIS LEE,

        Plaintiff,

    -against-                        07 Civ. 6733 (CM)

SONY BMG MUSIC ENTERTAINMENT, INC.,
and BARBARA WARNOCK-MORGAN,
Individual,

        Defendants.

———————————————————————x

| USDS SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 5/15/08 |

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

McMahon, J.:

Plaintiff Patricia Harris Lee ("plaintiff"), sued her former employer for violations of a number of federal and state statutes, after she allegedly became disabled and was discriminated against on the basis of her race, national origin and/or disability following an altercation with her supervisor. Specifically, the amended complaint alleges that the defendants (i) discriminated and retaliated against plaintiff on account of her disability in violation of the ADA, New York State Executive Law § 290 *et seq.* ("NYHRL"), and New York City Admin. Code § 8-801 *et seq.* ("NYCHRL") by constructively terminating plaintiff's employment, forcing plaintiff to work in a hostile environment, and refusing to accommodate plaintiff because of her disability; (ii) discriminated and retaliated against plaintiff on account of her race and national origin and subjected her to a hostile environment in violation of Title VII, Section 1981, NYHRL, and NYCHRL; and (iii) intentionally inflicted emotional distress on plaintiff. Plaintiff also alleges

that defendant Warnock-Morgan "aided and abetted" defendant SONY's disability

discrimination against plaintiff in violation of NYHRL. Defendants Barbara Warnock-Morgan

("Warnock-Morgan") and SONY BMG Music Entertainment, Inc. ("SONY") (collectively, the

"defendants") have moved to dismiss plaintiff's complaint, or alternatively for summary

judgment.

While both sides have submitted affidavits in connection with this motion, the Court

declines to treat this as a motion for summary judgment. For the reasons set forth below,

defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following well-pleaded facts in the four corners of the amended complaint are

presumed true. The Court notes that plaintiff's affidavit in opposition to defendants' motion

contains statements that are inconsistent with some of the allegations in her amended complaint.[1]

### A.    The parties

Plaintiff Patricia Harris Lee is an African-American female who worked at SONY and its

predecessor in New York, NY for sixteen years.

Defendant Barbara Warnock-Morgan was plaintiff's immediate supervisor at SONY at all

relevant times.

Defendant SONY, plaintiff's employer at all relevant times, is a domestic corporation,

with its principal place of business in New York. SONY employs more than fifteen individuals

and is a "covered entity" within the meaning of the ADA.

---

[1]Plaintiff will have to reconcile these inconsistencies in a second amended pleading.

***B.    Facts***

SONY hired plaintiff as a Promotion Assistant on or about September 1991. During the

course of her employment, plaintiff was never written up or disciplined formally, informally, or

otherwise. (Am. Cplt. ¶ 19.)

In 2005, plaintiff assumed the position of Associate Director of Advertising Management

in the Advertising and Marketing Services Department. Ms. Warnock-Morgan was her direct

supervisor.

On March 30, 2006, Warnock-Morgan held a meeting with members of SONY's Creative

Group, which plaintiff attended. During this meeting, the staff members, responding to rumors

of a departmental merger, questioned Warnock-Morgan about the security of their employment

positions. Warnock-Morgan became extremely angry, confrontational and hostile. (Am. Cplt. ¶

22.) She yelled and cursed at plaintiff. (Am. Cplt. ¶ 23.)

The following day, plaintiff and defendant Warnock-Morgan had an altercation (the

"altercation"). The altercation was, in part, a carry-over from the pervious day. Warnock-

Morgan, unprovoked, physically attacked plaintiff, causing her to sustain back, neck and

psychological injuries. (Am. Cplt. ¶ 24.)

On April 3, 2006, three days after the altercation, Warnock-Morgan accused plaintiff of

orchestrating the March 30th meeting in her absence so as to undermine her management

decisions. (Am. Cplt. ¶ 29.)

Shortly after the attack, Warnock-Morgan left a message on plaintiff's answering

machine asking for her forgiveness for the argument, and blaming the incident on steroid

medications she was taking. (Am. Cplt. ¶ 25.)

On or about April 3, 2006 and April 17, 2006, plaintiff reported the altercation to

Kathleen Kelly ("Kelly") and Dan Alcock ("Alcock") in the Human Resources Department. (Am.

Cplt. ¶ 26.) Plaintiff alleges that the Human Resources Department told her that she had to await

the outcome of their investigation into the assault, (Am. Cplt. ¶ 36), but was "never informed of

any resolution of the investigation" (Am. Cplt. ¶ 37). However, plaintiff never affirmatively

alleges that there was any investigation. From her allegation, I assume some sort of investigation

occurred.

From April 4, 2006 to May 26, 2006, plaintiff sent emails and left phone messages for

Kelly "continually voicing her fears and her displeasure at working hand-in-hand on a daily basis

with Warnock-Morgan." (Am. Cplt. ¶ 35.) Her complaints went unanswered, except for once

when Kelly told plaintiff to "endure through her work assignments with Warnock-Morgan, make

herself more accessible to Warnock-Morgan and to make sure to report her comings and goings

to Warnock-Morgan." (Am. Cplt. ¶ 36.) Warnock-Morgan remained plaintiff's direct supervisor

after the altercation, and, plaintiff alleges, upon information and belief, that no disciplinary action

was taken against Warnock-Morgan for physically attacking her. (Am. Cplt. ¶¶ 33, 34.)

Plaintiff also alleges that SONY has a policy that obligates employees to report any drug

use, legal or illegal, that may prohibit job performance or fitness for duty. Violation of this

policy may result in immediate termination or suspension without pay. Plaintiff alleges that no

disciplinary action was taken against Warnock-Morgan for violating SONY's drug policy. (Am.

Cplt. ¶¶ 32, 33.)

Each day plaintiff came to work after the altercation, plaintiff feared for her safety and

well-being. (Am. Cplt. ¶ 38.) The lack of support from the Human Resources Department

-4-

compounded plaintiff's fears. (Am. Cplt. ¶ 38.)

On May 30, 2006, plaintiff took a medical leave of absence on the advice of her physician. The amended complaint alleges that plaintiff took this leave because of the emotional stress of working in a hostile work environment. (Am. Cplt. ¶ 40.) In addition, her fear of working with Warnock-Morgan, along with the lack of support from Sony and its Human Resources Department, was further exacerbating her mental and physical condition. (Am. Cplt. ¶ 40.)

Plaintiff alleges that "she became non-responsive to the medical treatments she was receiving after the altercation." (Am. Cplt. ¶ 41.) Nowhere in the amended complaint does plaintiff indicate what medical treatments she was receiving, or what mental and physical condition she is referring to (other than the "back, neck, and psychological injuries" she experienced immediately after the altercation or the "emotional stress" of working in a hostile environment).

On or about June 6, 2006, plaintiff unexpectedly learned that she had been removed from SONY's payroll, and except for fifteen days of vacation pay, received no paychecks after this date. (Am. Cplt. ¶ 42.)

Thereafter, plaintiff applied for short-term disability, which was denied by SONY's insurance carrier. (Am. Cplt. ¶ 43.) Plaintiff alleges that, due to SONY's objections, plaintiff long-term disability and plaintiff initial application for worker's compensation benefits were both denied. (Am. Cplt. ¶¶ 44, 45.) Again, plaintiff does not allege what her disability was.

## C.    *Procedural history*

### 1.    *EEOC proceedings*

On or about July 18, 2006, plaintiff filed a Verified Complaint pursuant to Executive

Law, Article 15 with the New York State Division of Human Rights ("NYSDHR"), which also

appears to have been filed with the EEOC pursuant to New York's dual filing arrangements.[2]  On

April 30, 2007, the EEOC issued plaintiff a notice of right to sue with respect to the allegations

in this complaint.

On or about December 23, 2006, plaintiff filed a second charge of discrimination directly

with the EEOC.  On June 1, 2007, the EEOC issued plaintiff a notice of right to sue with respect

to the claim in this second charge.

Neither party has submitted a copy of the charges to the Court.  As a result, I have no idea

what types of discrimination plaintiff alleged in either of the charges, or why there are two of

them.  Since defendants do not move to dismiss on the ground of failure to exhaust

administrative remedies, I assume that at least those aspects of her complaint that require

exhaustion– all claims but plaintiff's IIED claim– were submitted to the EEOC for review in

connection with one of her charges.  I also assume the charges were timely filed.

### 2.    *This action*

On July 26, 2007, plaintiff filed the complaint in this action with the Clerk of the

Southern District of New York.  On November 30, 2007, plaintiff filed an amended complaint.

The amended complaint alleges that the defendants (i) discriminated and retaliated

---

[2]The amended complaint lists both a New York case number (10112825) and a federal
charge number (16GA603889).

against plaintiff on account of her disability in violation of the ADA, New York State Executive Law § 296 ("NYHRL"), and New York City Admin. Code § 8-107 et seq. ("NYCHRL") by constructively terminating plaintiff's employment, forcing plaintiff to work in a hostile environment, and refusing to accommodate plaintiff because of her disability; (ii) discriminated and retaliated against plaintiff on account of her race and national origin and subjected her to a hostile environment in violation of Title VII, Section 1981, NYHRL, and NYCHRL; and (iii) intentionally inflicted emotional distress on plaintiff. Plaintiff also alleges that defendant Warnock-Morgan "aided and abetted" defendant SONY's disability discrimination against plaintiff in violation of NYHRL.

## DISCUSSION

### A.    Standard of review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." Frasier v. General Elec. Co., 930 F.2d 1004, 1007 (2d Cir. 1991). The court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 515 (1972).

To survive a motion to dismiss, the complaint must comply with the pleading standard articulated in Federal Rule of Civil Procedure 8(a). See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511 (2002); Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1973-74 (2007) (reaffirming

the vitality of <u>Swierkiewicz</u>); <u>Boykin v. Keycorp</u>, 521 F.3d 202, 212 (2d Cir. 2008).  The

complaint must include "a short and plain statement of the claim showing that the pleader is

entitled to relief." <u>Swierkiewicz</u>, *supra*, 534 U.S. at 511 (quoting Fed.R.Civ.P. 8(a)(2)); <u>see also</u>

<u>Erickson v. Pardus</u>, --- U.S. ---, ---, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); <u>Twombly</u>,

*supra*, -- U.S. ---, 127 S. Ct. at 1964, 167 L.Ed.2d 929.  "Such a statement must simply 'give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"

<u>Swierkiewicz</u>, *supra*, 534 U.S. at 511 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>see</u>

<u>also</u> <u>Twombly</u>, *supra*, -- U.S. --, 127 S. Ct. at 1964, 167 L.Ed.2d 929.

Claims of employment discrimination are analyzed pursuant to the tripartite burden-

shifting framework established in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 93, S. Ct.

1817 (1973), and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089 (1981).

The burden initially falls upon the plaintiff to establish a prima facie case of racial discrimination

in the terms and conditions of employment. To do so,  plaintiff must show that: (1) she belongs

to a protected class; (2) she was performing her duties satisfactorily; (3) she was subject to an

adverse employment action; and (4) that the action occurred in circumstances giving rise to an

inference of discrimination based on plaintiff's membership in that class. <u>See</u> <u>McLee v. Chrysler</u>

<u>Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997).

However, an employment discrimination complaint need not allege specific facts

establishing a *prima facie* case of employment discrimination or otherwise meet a heightened

pleading standard. <u>Swierkiewicz</u>, *supra*, 534 U.S. at 513; <u>Boykin</u>, *supra*, 521 F.3d at 212.

Instead, the complaint must assert "enough facts to state a claim to relief that is plausible on its

face." <u>Twombly</u>, *supra*, -- U.S. --, 127 S. Ct. at 1973-74, 167 L.Ed.2d 929.  This "plausibility

-8-

standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).

As a preliminary matter, all Title VII and ADA claims against Warnock-Morgan are dismissed with prejudice because she was not plaintiff's employer and thus cannot be held liable under these statutes. See Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir.1995).

### B.    Analysis

The national origin-based discrimination claim brought under section 1981 is dismissed with prejudice, because that statute does not cover national origin. See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1981). The remaining national origin-based discrimination claims brought under state, local and federal law are dismissed without prejudice. Plaintiff does not plead what her national origin is, so the Court cannot assess whether plaintiff states a claim for national origin discrimination.

The disability discrimination claims under the ADA are dismissed because plaintiff fails to plead that she could not perform any major life activity, and because she pleads no facts tending to suggest that anyone discriminated against her because of any disability or perceived disability. See 42 U.S.C. § 12102(2); Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998). Indeed, it does not even identity what her disability is– she merely states that she (1) suffered unspecified "back, neck, and psychological injuries" following the altercation with Warnock-Morgan, and (2) and was "forced to go on leave" because of the "emotional stress" of working in a hostile work environment. Plaintiff's inability to work under a particular supervisor does not give rise to an independent claim for disability discrimination. See, e.g., Gaul v. Lucent

-9-

Technologies, Inc., 134 F.3d 576, 580 n. 3 (3d Cir. 1998) ("we strongly suspect that a plaintiff

who is unable to work with individuals who cause him 'prolonged and inordinate stress' cannot

be said to be incapable of performing a 'class of jobs or a broad range of jobs in various

classes'") (quoting 29 C.F.R. § 1630.2(j)(3)); Siemon v. AT&T Corp., 117 F.3d 1173, 1176

(10th Cir. 1997) (plaintiff's "mental impairment merely prevent[ed] him from working under a

few supervisors within the organizational structure of one major corporation," and he was

therefore "not an 'individual with a disability'" under the ADA); Weiler v. Household Finance

Corp., 101 F.3d 519, 524 (7th Cir. 1996) ("Weiler's claim amounts to a charge that she is only

unable to work if Skorupka is her boss.... [W]hatever Weiler's problem was with Skorupka, it is

not recognized as a disability under the ADA"); James v. Federal Reserve Bank of New York,

2005 WL 1889859, at *9 (E.D.N.Y. Aug. 8, 2005) (granting motion to dismiss disability

discrimination claims based on plaintiff's alleged inability to work and interact with others and

stressful work situation); Harrison v. New York Housing Auth., 2001 WL 1658243, at *2-3

(S.D.N.Y. Dec. 26, 2001) (granting motion to dismiss ADA claim based on plaintiff's stress from

supervisors); Mescall v. Marra, 49 F. Supp. 2d 365, 373 (S.D.N.Y. 1999) ("Mescall's inability to

work as a guidance counselor under the supervision of Delgado does not constitute a disability

within the meaning of the ADA").  In addition, the mental and/or physical fallout from the

discrimination that was allegedly practiced against her does not give rise to an independent claim

for disability discrimination– rather it goes to the issue of damages on her underlying

discrimination claim.

Plaintiff's disability claims under state and local law do not have to satisfy the "major life

activity" test.  See Treglia v. Town of Manlius, 313 F.3d 713, 723 (2d Cir. 2002) (quoting

Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 154 (2d Cir. 1998)).  Instead, New

York law defines "disability" more broadly as:

> (a) a physical, mental or medical impairment resulting from anatomical,
> physiological, genetic or neurological conditions which prevents the exercise of a
> normal bodily function or is demonstrable by medically accepted clinical or
> laboratory diagnostic techniques or (b) a record of such an impairment or (c) a
> condition regarded by others as such an impairment, provided, however, that in all
> provisions of this article dealing with employment, the term shall be limited to
> disabilities which, upon the provision of reasonable accommodations, do not
> prevent the complainant from performing in a reasonable manner the activities
> involved in the job or occupation sought or held.

N.Y. Executive Law § 292.  Nonetheless, because plaintiff does not specify what her disability is,

her disability discrimination claims under state and local law must be dismissed.

The disability discrimination claims are dismissed without prejudice.  Plaintiff will be

permitted to file an amended complaint.  In that pleading, she must specify (1) what disability she

suffers from; (2) when it commenced; (3) how it impacted a major life function (if it did); (4)

how it prevented her from exercising normal bodily function or is demonstrable by medically

accepted clinical or laboratory diagnostic techniques (if it did); (5) how it impacted plaintiff's

ability to perform her job; (6) if she sought an accommodation, when and what she sought.  If

plaintiff alleges that as a result of acts of discrimination she suffered some physical injury or

emotional damage, the Court will dismiss the disability claim; again, such allegations go to

damages on her underlying discrimination claim.  If her disability allegations prove inadequate,

they will be dismissed *sua sponte*.

Defendants' motion to dismiss plaintiff's claims for race discrimination in employment

and termination and hostile work environment, whether under Title VII or state and local law, is

denied.

Plaintiff's claims for retaliation are dismissed without prejudice. The complaint does not

allege what the adverse employment actions that were taken in retaliation were– although one

could guess that plaintiff is talking about being fired. Plaintiff should be much more specific in

her next pleading.

Defendants' motion to dismiss plaintiff's intentional infliction of emotional distress claim

is granted. To make out a claim for intentional infliction of emotion distress under New York

law, a plaintiff must plead: (1) extreme and outrageous conduct; (2) intent to cause, or reckless

disregard of a substantial probability of causing, severe emotional distress; (3) a causal

connection between the conduct and the injury; and (4) severe emotional distress. Conboy v. AT

& T Corp ., 241 F.3d 242, 258 (2d Cir. 2001). As the New York Court of Appeals has observed,

the standard for making out a valid claim of intentional infliction of emotional distress is

"rigorous, and difficult to satisfy." Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596

N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993) (citations omitted). The conduct must be "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Murphy v.

Am. Home Prods. Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

The amended complaint alleges that "Defendants, by the actions described herein

exhibited extreme and outrageous conduct." (Am. Cplt. ¶ 80.) Plaintiff's allegations relating to

the altercation and/or the hostile work environment fail to meet the extremely high threshold

established under New York law for the highly disfavored claim of IIED. See, e.g., Lydeatte v.

Bronx Overall Economic Development Corp., 2001 WL 180055, at *2 (S.D.N.Y. 2001) ("Acts

which merely constitute harassment, disrespectful or disparate treatment, a hostile environment,

humiliating criticism, intimidation, insults or other indignities ... [are] not sufficiently

outrageous."); Freedom Calls Found. v. Bukstel, 2006 WL 2792762, at *3 (E.D.N.Y. 2006)

("Courts in the Second Circuit, when considering ... emotional distress claims under New York

law, have noted that even if a 'defendant has acted with an intent which is tortious or even

criminal,' or 'has intended to inflict emotional distress,' or has even engaged in conduct that 'has

been characterized by malice, or a degree of aggravation which would entitle the plaintiff to

punitive damages for another tort, there can be no claim if the conduct at issue is not utterly

reprehensible.'") (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)). Thus,

plaintiff's IIED claim against SONY and Warnock-Morgan is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and

DENIED in part.

Leave to amend should be freely given when justice dictates, see Fed. R. Civ. P. 15(a);

Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir.1995), and I am permitting

plaintiff to file an amended complaint. However, plaintiff has already filed one amended

pleading, and while her amended complaint reads as though it had been drafted by a pro se

litigant, she is in fact represented by counsel. So, the next complaint will be the last complaint.

Within ten (10) days of the date of this decision, plaintiff may file a second amended complaint,

setting forth all the necessary elements of her claims. Plaintiff should also use this opportunity to

reconcile the inconsistencies between her affidavit in opposition to this motion and her first

amended complaint.

This constitutes the decision and order of the Court.

Dated: May 15, 2008

_____

U.S.D.J.

BY ECF TO ALL COUNSEL