UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
PATRICIA HARRIS LEE, :
                                                                             07 CV 6733 (CM)
                          Plaintiff, :

                                                                             **DECLARATION OF**
                          v. : **BARBARA WARNOCK-**
                                                                            **MORGAN**

SONY BMG MUSIC ENTERTAINMENT, INC. :
and BARBARA WARNOCK-MORGAN,
Individual, :

                        Defendants. :
------------------------------------------------------------x

    BARBARA WARNOCK-MORGAN declares as follows:

    1. I am the Associate Director, Advertising, Commercial Music Creative Group, SONY BMG MUSIC ENTERTAINMENT ("SONY BMG") and a defendant herein. I submit this declaration in support of Defendants' motion for an order dismissing the Second Amended Complaint, dated May 30, 2008 ("Second Amended Complaint"), and/or granting summary judgment in favor of Defendants. I have personal knowledge of the matters contained in this declaration and, if called upon, I could and would testify to each of the statements made herein.

    2. I was employed by Sony Music in 1989 and continued with SONY BMG after the merger of Sony Music Entertainment, Inc. and BMG Music in 2004. I have known the Plaintiff Patricia Harris Lee through her employment in the Creative Group for approximately fourteen years. I have been her immediate supervisor since approximately 2002.

3. This action stems entirely from a verbal altercation between Plaintiff and me on March 31, 2006. At the time, I was in a physically and emotionally distressed state, having suffered a second miscarriage and a surgical procedure, a D&C, on March 29, 2006, following an unsuccessful in vitro fertilization. My husband and I have been battling infertility for a prolonged period. The personnel in my department were well aware of my medical and family circumstances

4. The March 31 altercation was a carry-over from an impromptu meeting on March 30 when several members of the Creative Group peppered me with questions concerning their concerns about the impact upon them of a rumored merger of our department with another department. I thought the meeting was going to be a general department luncheon, but it quickly disassembled into a confrontation when I was ambushed with questions that I had not expected and could not answer on the spot. Although I lost my temper with other members of the staff, I did not yell or curse at Plaintiff, as she now falsely claims. Exhibit A to Williams Decl. at ¶23. Indeed, Plaintiff has admitted to independent investigators who were investigating her worker's compensation claim that I did not mistreat her at this meeting:

> Q. Okay, now, during that meeting okay . . . is there any point where there might have been some type of outburst by Barbara?
>
> A: Yeah. Barbara got extremely angry at Rob's questioning and she started to raise her voice and use profanity. She stated that, you know, she had just had her baby checked out, was the exact term, and you know, she's emotional and you know, she just . . . it . . . yeah. Basically, she didn't understand why she was being questioned or why he questioned her.

\* \* \*

>Q: Now, did anyone else have any type of . . . or did Barbara have any other… uh, anger?
>
>A: She was . . . he was . . . she was showing signs of anger. She didn't . . . she stopped yelling at him. Rob asked him to stop yelling at him and cursing at him and she stopped. And I asked her, I just said, you know, Barbara calm down.
>
> * * *
>
>Q.: **Did you personally have any interaction with her as far as negatively?**
>
>A: **Not in the meeting. I had very little to say. I was…yes, not in the meeting. I had very little to say. I was pretty much listening.**

Exhibit B to Williams Decl. at ¶¶46-47 (Emphasis added).

    5. The next day, March 31, I had a discussion with Plaintiff about performing work for other departments. My comment caused Plaintiff to become inexplicably defensive. I was merely attempting to lessen her workload. Later in the day, Plaintiff came to my office to remind me that she was leaving early. Plaintiff brought up our earlier discussion as well as the subject of the previous day's impromptu meeting regarding the rumored merger. She became very agitated when I expressed reluctance to discuss matters which I had little or no information about. Plaintiff told me that I was a hypocrite, that I took things too personally and that I was distrusted by members of our department. I explained to her that I was overwrought emotionally from my surgery, which had occurred less than 48 hours earlier, and that I too was preparing to leave the office early.

    6. As I began to leave my office, Plaintiff pursued me down the hallway to the elevator where she fixed her position in front of me and began taunting me for becoming

emotional. I was getting teary eyed. She persisted and even questioned my becoming pregnant, sneering the word "pregnant" at me.

7. Although Plaintiff alleges that I "physically attacked" her (Williams Decl., Ex. A at ¶25), she touched me, not the other way around. The physical contact between us consisted of Plaintiff placing her hands on mine. I raised my hands in front of my face, indicating that I had had enough and that she should stop what she was doing to me.

8. Plaintiff was not suffering any emotional or physical disability at the time of our encounter on March 31, and she does not claim otherwise. My reaction to Plaintiff's outburst was not based on any disability discrimination, as there could be no basis for it. I also did not utter or imply any racially offensive remarks, and, again, Plaintiff does not claim that I did so.

9. On April 12, 2006, Adam Owett, my direct supervisor, met with me. Although sympathetic to my vulnerable physical and emotional state at the time of the incident, Mr. Owett verbally admonished me and warned me that any further incident would result in disciplinary action, which could include my termination from the company.

10. Between March 31 and May 30, 2006, Plaintiff continued to perform her assigned job duties. I continued as her supervisor without further incident. She neither requested, nor ever mentioned to me that she wanted, a transfer from my department. On May 30, 2006, Plaintiff went on medical leave and has been on unpaid leave since July 10, 2006.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York, on this 10th day of July, 2008.

_____
BARBARA WARNOCK-MORGAN