UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
PATRICIA HARRIS LEE,                                    07 CV 6733 (SM)

                               Plaintiff,         **DECLARATION OF**
                                                        **PATRICIA HARRIS LEE**

   -v -


SONY BMG MUSIC ENTERTAINMENT, INC, and
BARBARA WARNOCK-MORGAN, Individual


                                 Defendants.
-----------------------------------------------------------------------x

**PATRICIA HARRIS LEE, declares as follows:**

1. I am an African-American woman and the above-named plaintiff in this action.

2. I began my sixteen (16) year employment tenure with Sony BMG Music Entertainment, Inc. ("Sony BMG") and its predecessor in September 1991.

3. I most recently served as an Associate Director of Advertising Management in the Advertising and Creative Services Department. In this position, I was under the immediate supervision of Defendant Barbara Warnock-Morgan ("Warnock-Morgan").

4. Warnock-Morgan is a Senior Director at Sony BMG and a Caucasian woman.

5. Throughout my employment tenure at Sony BMG, my performance evaluations have been consistently noted as outstanding and satisfactory.

6. On March 30, 2006, I attended a management staff meeting in which rumors of a departmental merger, possible lay-offs, and reconstruction concerns were being addressed.

1

7. At this meeting, Warnock-Morgan became extremely angry, confrontational and hostile when other staff members began to badger her with questions regarding their employment. All other staff members at this meeting were Caucasian.

8. Warnock-Morgan at the meeting began to yell and curse at me. I sat speechless and shocked. Along with other staff members, I politely asked Warnock-Morgan to compose herself so that the meeting could continue.

9. On March 31, 2006 Warnock-Morgan singled me out because of my race.

10. On March 31, 2006, Warnock-Morgan baselessly accused me of orchestrating the March 30th meeting in her absence so as to undermine her management decisions. She also accused me of not being sensitive to the fact that she recently underwent a D&C as a result of a miscarriage. Warnock-Morgan also said that she hoped I would suffer two miscarriages, and that she hoped that I get to watch my fucking babies get sucked out of me, and then see if she cared.

11. While she was yelling and verbally attacking me with the above-mentioned statements, Warnock-Morgan charged up to me so that we were face to face and thrusted her hands in front of my face. As a result of this, I was physically backed up against the wall. She was shaking out of anger and her hands were flailing. I grasped her wrists to keep her from hitting me and pleaded with her to stop and calm down. Warnock-Morgan has a significant height and weight advantage over me and I felt threatened by her aggressive behavior.

12. Minutes after the above-mentioned incident occurred, Warnock-Morgan left an apologetic message on my answering machine and blamed her physical assault on me on "ware-wolf" conditions she cannot control. Fearful that I would charge her with an assault, Warnock-Morgan asked me to not call the authorities, or tell the "guys with big nets" to come and get her.

13. After the March 31, 2006 incident, I suffered physical and psychological injuries, including but not limited to: traumatic cervical, thoracic and lumbosacral pain syndrome with spasm, severe reactive anxiety disorder, post traumatic stress disorder, and depression.

14. The symptoms related to my psychological injuries are medically documented and /include sleep difficulty, decreased appetite, loose stools, reduced ability to concentrate, feelings of depression and back pain.

15. I became non-responsive to the medical treatments I was receiving after the March 31, 2006 incident.

16. On April 3, 2006 I reported the March 31, 2006 incident to Kathleen Kelley ("Kelley") in the Human Resources Department ("Sony HR"). Kelley is a Caucasian female.

17. While I was at the above-mentioned meeting, I informed Sony HR that I no longer desired to work with Warnock-Morgan and asked Kelley if she knew what was going on with other departments and/or the possibility of being transferred or reassigned.

18. After this meeting, I sent weekly emails to Kelley expressing my concerns, fears, and displeasure at working hand-in-hand on a daily basis with Warnock-Morgan.

19. On April 14, 2006, Dr. Bassel, who was my treating physician, notified Sony HR and a nurse practitioner of the seriousness of my medical condition. At this time, Dr. Bassel urged Sony HR to physically separate me from Warnock-Morgan because of his concern over our close physical proximity. Dr. Bassel then stated that he would release me to go back to work, under doctor supervision, if the matter at work could be quickly resolved. Sony HR assured Dr. Bassel that Sony BMG would take action to safeguard my physical and emotional well-being.

20. Despite Sony BMG's above-mentioned assurances, they failed to take any action to accommodate my medical condition.

21. After the March 31, 2006 incident, I was forced to continue working in the same capacity and under the direct supervision of Warnock-Morgan.

22. At one point, Kelley told me that I needed to endure through my work assignments with Warnock-Morgan, make myself more readily accessible to her, and to make sure that I report my comings and goings to her.

23. On April 17, 2006 I again reported the incident to Kelley and Dan Alcock in the Human Resources Department ("Sony HR"). Kelley and Alcock are also both Caucasian. Warnock Morgan also attended this meeting. I again informed Sony HR of my concerns at working hand-in-hand on a daily basis with Warnock-Morgan.

24. On April 19, 2006 I sent Kelley another email asking her for recommendations and/or options of how Sony BMG could best accommodate my medical condition.

25. Sony HR repeatedly failed to respond to any communication I sent them and showed an indifference to my concerns of being retaliated against.

26. Sony HR repeatedly ignored my repeated requests that they follow up with me regarding their investigation into the March 31, 2006 incident and provide me with a copy of their investigative reports.

27. Sony HR repeatedly ignored my repeated request that they pursue and redress the March 31, 2006 incident. I also inquired about what remedial measures, if any, Mr. Owett would take against Warnock-Morgan.

28. Sony HR's repeated pattern of ignoring me was based upon my race.

29. Sony BMG has a zero-tolerance policy against violence in the workplace and such acts usually result in the immediate termination of the attacker. Sony BMG failed to apply this policy against Warnock-Morgan because she is Caucasian.

30. On May 30, 2006, after approximately two months of working in a hostile work environment and having my concerns go ignored, I took a medical leave of absence based upon the advice of my physician.

31. I filed a claim for disability benefits with Sony BMG's disability carrier, CIGNA Life Insurance Company of New York ("CIGNA"). I have appealed their denial of my disability claims three times. [1]

**Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at New York, New York on this ____ date of March 2008.**

*[signature]*
PATRICIA HARRIS LEE

---

[1] The April 24, 2007 appeal letter is annexed hereto as Exhibit "A."

5